**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RASHAUN FERGUSON,** | |
| Plaintiff, | Civil Action No. 16-3304 (ES) |
| v. | OPINION |
| **PATRICK NOGAN, et al.,** | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

This matter is before the Court upon a motion to dismiss filed by defendant Frank Granato ("Defendant").[1] (D.E. No. 55, Motion to Dismiss ("Motion")). Defendant seeks to dismiss the claims raised against him by plaintiff Rashaun Ferguson ("Plaintiff") in the amended complaint (D.E. No. 48 ("Amended Complaint" or "Am. Compl.")). Plaintiff filed an opposition to the Motion (D.E. No. 62 ("Pl. Opp. Br.")) and Defendant did not file a reply. Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). As set forth below, Defendant's motion is denied in part and granted in part.

**I.     Background**

Plaintiff is a former inmate at East Jersey State Prison ("EJSP") in Rahway, New Jersey. (Am. Compl. at 2[2]). On or about November 18, 2014 at approximately 7:30 a.m., Plaintiff was in his cell at EJSP in the 4-Wing. (*Id*. at 3). Defendant, a senior corrections officer, and other officers

---

[1]     The Court notes that there are other defendants in this matter who have not filed a motion to dismiss and are discussed herein only as necessary.

[2]     Because the Amended Complaint restarts with "Paragraph 1" in each section, the Court refers to the page numbers when it cites to the Amended Complaint.

were assigned to the 4-Wing at EJSP and opened the cells for "mess movement." (*Id.*). Shortly thereafter, another inmate entered Plaintiff's cell and attacked him with a razor. (*Id.*). The attack persisted for approximately 15 to 20 minutes as Defendant had locked the attacker inside of Plaintiff's cell. (*Id.*). During the attack, a part of Plaintiff's left ring finger was bitten off. (*Id.*). According to Plaintiff, Defendant and other officers did nothing to prevent the assault from happening, nor did they intervene to stop the assault once it began. (*Id.*).

As result of the assault, Plaintiff was taken to University Hospital in Newark where he had to undergo surgery for a partial amputation of his left ring finger. (*Id.*). Plaintiff was also treated for lacerations to his hands and ear from the attack with the razor. (*Id.*). After the partial amputation of his finger, an appointment was scheduled for Plaintiff to see a plastic surgeon at University Hospital on December 1, 2014. (*Id.* at 4). However, Defendants University Correctional Health Care and University Correctional Health Care Employees (collectively "the Medical Defendants") and/or the New Jersey Department of Corrections ("NJDOC") did not transport Plaintiff to University Hospital to see the plastic surgeon until mid-December 2014. (*Id.*). During the December 2014 visit, the plastic surgeon removed some of the stiches from Plaintiff's finger. (*Id.*). A follow up appointment was then scheduled with the plastic surgeon for January 2015 for further examination and treatment; however, the Medical Defendants and/or the NJDOC did not transport Plaintiff to University Hospital for this appointment. (*Id.*).

Plaintiff filed multiple grievances requesting transportation to the hospital for follow-up treatment on his amputated finger. (*Id.*). Plaintiff's family also contacted the Medical Defendants and/or NJDOC on his behalf regarding his transportation to the hospital for follow-up treatment. (*Id.*). Finally, six months later in July 2015, Plaintiff was transported to University Hospital, and he was advised that due to the long delay in treatment and therapy, his finger would be permanently

deformed. (*Id.* at 4–5). A follow-up appointment was scheduled for Plaintiff in October 2015, but the Medical Defendants and/or the NJDOC did not transport Plaintiff to University Hospital until December 2015. (*Id.* at 5). Ultimately, treatment was discontinued in February of 2016 because of "the repeated failures by Defendants to transport Plaintiff for proper treatment of his amputated finger." (*Id.*).

On June 6, 2016, Plaintiff filed his initial complaint, *pro se*, alleging violations of his civil rights under 42 U.S.C. § 1983. (D.E. No. 1). Because Plaintiff failed to submit a complete *in forma pauperis* application, the Court administratively terminated the matter. (D.E. No. 3). On July 8, 2016, Plaintiff moved to reopen the case and submitted his application to proceed *in forma pauperis*. (D.E. Nos. 4 & 5). The Court granted Plaintiff's motion to reopen and application to proceed *in forma pauperis*, and subsequently permitted Plaintiff's Complaint to proceed in part pursuant to 28 U.S.C. §§ 1915 and 1915A. (D.E. Nos. 6 & 9). Specifically, the Court permitted Plaintiff's claim against Defendant for failure to protect under the Eighth Amendment and Plaintiff's Eighth Amendment denial of medical care claims against defendants John Does 1 to 10 and employees of East Jersey State Prison Medical Department. (D.E. No. 9).

On May 18, 2017, the Court issued summonses for Defendant and EJSP Medical Department; however, Plaintiff failed to serve Defendant. (D.E. No. 12). On August 3, 2017, Plaintiff filed a request for default and default judgment (D.E. No. 16), which the Court denied on November 20, 2017 (D.E. No. 17). Plaintiff thereafter filed a reconsideration of that denial (D.E. No. 18) and a motion for summary judgment (D.E. No. 19). The Court denied both. (D.E. No. 21). Approximately five months later, the Court entered a notice of call for dismissal pursuant Local Civil Rule 41.1(a) for lack of prosecution. (D.E. No. 26). One month later, an attorney entered an appearance on behalf of Plaintiff, served Defendant, and then sought and received an

3

entry of default against Defendant. (D.E. Nos. 28, 31–32 &36). On November 1, 2019, Defendant moved to set aside default (D.E. No. 38), which the Court granted and permitted Plaintiff to file an amended complaint (D.E. No. 46). Plaintiff filed the Amended Complaint on December 16, 2019, alleging, among others, Eighth Amendment and New Jersey Civil Rights Act ("NJCRA") claims against Defendant for failing to protect him from the assault by the other inmate and failing to intervene to stop the assault.[3] (Am. Compl. at 5).

On January 16, 2020, Defendant filed the instant Motion seeking to dismiss the Amended Complaint for failure to timely serve him and for failure to state a claim. (D.E. No. 55).

## II.     Legal Standards

### A.     Rule 12(b)(5)

A plaintiff must serve his summons and complaint on each defendant within 90 days of filing the complaint or the matter is subject to dismissal. Fed. R. Civ. P. 4(m). Rule 12(b)(5) permits a court to dismiss a complaint for insufficient service of process. The party effecting service has the burden of establishing that service was sufficient. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

Before a court dismisses a case for insufficient service of process, it must determine whether there was good cause for a plaintiff's failure to effect timely service. *Petrucelli v. Bohringer & Ratzinger, GMBH*, 46 F.3d 1298, 1305 (3d Cir. 1995). A plaintiff has the burden to establish good cause. *Mason v. Therics, Inc.*, No. 08-2404, 2009 WL 44743, at *2 (D.N.J. Jan. 6, 2009). "'Good cause' has been defined as being tantamount to 'excusable neglect,' under Fed. R. Civ. P. 6(b)(2), which requires 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'"

---

[3]     The Amended Complaint also contains claims against the other defendants not relevant here.

4

*Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)). If a plaintiff can demonstrate that good cause exists, "the district court must extend the time for service." *Petrucelli*, 46 F.3d at 1305. If, however, good cause does not exist, "the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli*, 46 F.3d at 1305. To that end, Courts have "broad discretion" in deciding a motion to dismiss pursuant to Rule 12(b)(5). *Hoist v. New Jersey*, No. 12-5370, 2013 WL 5467313, at *3 (D.N.J. Sept. 30, 2013).

      **B.**      **Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the burden is on the defendant to show that the plaintiff has not stated a facially plausible claim, *see Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "All allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But a court does not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained

in a complaint is inapplicable to legal conclusions."). In the Third Circuit, courts' inquiry into a Rule 12(b)(6) motion is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Finally, "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (citations and internal quotation marks omitted).

### III. Analysis

#### A. Untimely Service

Defendant first seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5) because Plaintiff failed to serve him within the required time frame under Federal Rule of Civil Procedure 4(m). (Def. Mov. Br. at 4–6). Plaintiff concedes that he did not timely serve Defendant. (Pl. Opp. Br. at 1). However, Plaintiff argues that he can show good cause for his failure to do so, because he believed the Marshals Service had served Defendant. (*Id.* at 2). According to Plaintiff, on May 8, 2017, the Court sent him the Marshals Service Form 285 ("285 Form") and instructions for completing summons for service. (D.E. No. 61-1, Certification of Rashaun Ferguson ("Ferguson Cert.") ¶ 8). On August 15, 2017, the summons was returned as unexecuted against

6

the Medical Defendants, but Plaintiff certifies that no such notice was provided to him. (*Id.* ¶ 10). While this may explain his belief that the Medical Defendants had been served, it does not explain why he thought Defendant had been served. More specifically, Plaintiff's certification does not address, nor has he provided any evidence to show, whether he returned a 285 Form for Defendant to the Marshals. (*See generally* D.E. No. 61-1). The Court previously highlighted this precise issue for Plaintiff when it denied his motions for default judgment and summary judgment on May 9, 2018. (D.E. No. 21 ¶ 2). The Court does recognize, however, that the copy of the Court's May 9, 2018 Order was sent to Plaintiff at his last known address on the docket and was returned as undeliverable. (D.E. No. 22). Plaintiff thereafter updated his address and requested copies of filings, but it does not appear that a copy of the Court's May 9, 2018 Order was re-sent to him.

      The Court is aware that Federal Rule of Civil Procedure 4 requires it to order service of the summons and complaint by the Marshals for a plaintiff who is proceeding *in forma pauperis*. Fed. R. Civ. P. 4(c)(3). Nonetheless, a plaintiff must still provide sufficient information for the court/Marshals to do so. *Maltezos v. Giannakouros*, 522 F. App'x 106, 108 (3d Cir. 2013) (citing *Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993)) ("it is the responsibility of a plaintiff proceeding *pro se* and [*in forma pauperis*] to provide proper addresses for service"). Despite the explicit instruction in the letter from the Clerk's Office to Plaintiff that a 285 Form must be completed for *each* named defendant (D.E. No. 10), Plaintiff has put forth no evidence, nor does he so certify, that he submitted such a form for Defendant. Consequently, the Court finds he has failed to establish good cause. *See Himmelreich v. United States*, 285 F. App'x 5, 7 (3d Cir. 2008) ("plaintiff must show reasonable diligence before good cause can be found") (citing *Bachenski v. Malnati*, 11 F.3d 1371, 1376–77 (7th Cir. 1993)).

7

Nevertheless, even if good cause is not shown, a district court may exercise its discretion to extend time for service after considering factors such as: (1) actual notice of the legal action; (2) prejudice to the defendant; (3) the statute of limitations on the underlying causes of action; (4) the conduct of the defendant; (5) whether the plaintiff is represented by counsel, and (6) any other factor that maybe relevant. *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009). In consideration of Plaintiff's *pro se* status and the confusion as to his address,[4] the fact that Defendant does not argue that he suffered any prejudice, and the fact that Petitioner's claims would now be barred by the statute of limitations if dismissed, the Court will exercise its discretion to extend the time to serve Defendant to August 23, 2019, when Defendant was properly served (D.E. No. 36-2). *See*, *e.g.*, *Petrucelli*, 46 F.3d at 1306, 1314 (recognizing that the Court "may . . . consider whether the running of the statute of limitations would warrant granting an extension of time" and also noting lack of prejudice to defendant as a factor for extending time to serve); *Himmelreich*, 285 F. App'x at 7 (noting that a court's mistake regarding plaintiff's current address considered as one of several factors warranting extension of time for service). Accordingly, the Court finds that service was proper and Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) for untimely service is denied. *See MCI Telecomm. Corp.*, 71 F.3d at 1098 (affirming the district court's denial of motion to dismiss and stating that "the retroactive effect of Rule 4(m) means that the district court had the discretion to allow this action to proceed . . .").

---

[4] Beginning in mid-May 2018, mailings sent to Plaintiff at his address on record at Bayside State Prison were returned to the Court as "undeliverable." (*See* D.E. Nos. 22 & 24). Plaintiff updated his address in October 2018, but subsequent copies sent to the new address he provided at the halfway house, Hope Hall, were still returned as undeliverable. (D.E. Nos. 27 & 30). Plaintiff anticipated the difficulties of receiving mail at the halfway house and also provided another permanent address for correspondence, but it does not appear that any copies of filings were sent to that alternate address. (*See* D.E. No. 25; Ferguson Cert. ¶ 17 & n.3).

### B.     Failure to State a Claim

Having determined service was proper, the Court moves on to address Defendant's argument that the Amended Complaint fails to state a claim against him and is therefore subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  The claims against Defendant are failure to protect and intervene under the Eighth Amendment, the NJCRA, and the New Jersey Constitution.  Because the NJCRA is analogous to § 1983 in that it creates a private right of action for violation of the proscription against cruel and unusual punishment secured by the New Jersey Constitution, the Court's analysis on Plaintiff's Eighth Amendment claims applies equally to his claims asserted under the NJCRA and the New Jersey Constitution.  *Camps v. Scholtz*, No. 17-1895, 2020 WL 1330326, at *3 (D.N.J. Mar. 23, 2020) (citing *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443 (D.N.J. 2011) ("[t]he New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*, was modeled after and has repeatedly been interpreted analogously to § 1983")); *Ramirez v. Nugent*, No. 12-6781, 2014 WL 7404048, at *6 (D.N.J. Dec. 30, 2014) (stating that a claim of deliberate indifference asserted under the New Jersey Constitution is "analyzed identically to a deliberate indifference claim under the Eighth Amendment).  For the reasons set forth below, Plaintiff's failure to protect and failure to intervene claims are dismissed.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal citations omitted).  "This constitutional limitation on punishment has been interpreted to impose a duty upon prison officials to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners.'"  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  To state a claim for damages against a prison official for failure to protect from inmate violence, "an inmate must plead

facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer*, 511 U.S. at 834; *Hamilton*, 117 F.3d at 746). "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety" and "it is not sufficient that the official should have known of the risk." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 & 133 (3d Cir. 2001). In other words, prison officials may escape liability if they "believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," or "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. But where a defendant has no "realistic and reasonable opportunity to intervene" or otherwise protect the plaintiff, he cannot be held liable. *Bistrian* at 371 (quoting *Smith v. Messinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). To that end, "if an officer witnesses an inmate assault and fails to intervene, 'his actions would seemingly constitute a paradigm case of deliberate indifference.'" *Id.*

As discussed above, according to the Amended Complaint, Defendant opened the cell doors on Plaintiff's wing to allow the inmates to proceed to breakfast. (Am. Compl. at 3). Shortly thereafter, another prisoner entered the cell and attacked Plaintiff with a razor. (*Id.*). At an unspecified time later, Defendant locked the doors, closing Plaintiff in the cell with the other inmate. (*Id.*). This allowed the inmate to attack Plaintiff for 15 to 20 minutes.[5] However, the Amended Complaint does not allege that Defendant was aware that he locked Plaintiff and another inmate in the cell when he closed the doors. Nor does the Amended Complaint allege that Defendant was aware that the other inmate posed a risk to Plaintiff such that allowing the other

---

[5] The Amended Complaint does not state how or why the attack ultimately concluded.

10

inmate to enter Plaintiff's cell could result in harm.  The Amended Complaint is devoid of factual allegations based on which the Court can reasonably infer that Defendant was aware that the assault was occuring.  *See Iqbal*, 556 U.S. at 678.  Similarly, there are also no allegations that Defendant had a reasonable opportunity to intervene and failed to do so.  *See Smith*, 293 F.3d at 650.  Rather, Plaintiff merely states in conclusory terms that "[u]pon information and belief [Defendant] and other Corrections Officers were aware and acted with deliberate indifference to the substantial risk of harm in allowing the inmate-attacker to enter Plaintiff's cell and failing to intervene." (Am. Compl. at 3).  Plaintiff's Amended Complaint thus falls short of meeting the Rule 12(b)(6) standard under *Iqbal* and *Twombly*.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

In opposition, Plaintiff argues that it is premature to dismiss the claims against Defendant because the ongoing discovery will shed light on Defendant's acts and omissions.  (Pl. Opp. Br. at 4).  This argument is misplaced.  Rule 12(b)(6) motions "are meant to test whether the plaintiff is entitled to offer evidence gleaned through discovery to support his claims." *Milliner v. DiGuglielmo*, No. 08-4905, 2010 WL 972151, at *1 (E.D. Pa. Mar. 16, 2010) (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F. 3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and alterations omitted).  The very purpose of Rule 12(b)(6) is to "streamline litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).  Thus, information that may be uncovered through discovery is not a sufficient reason to defeat motions to dismiss.  Additionally, the information need to meet the requisite pleading standard, should be available to Plaintiff.

Plaintiff fails to allege sufficient facts to suggest that Defendant knew of a substantial risk of serious harm to Plaintiff and was deliberately indifferent to that harm, or that Defendant knew

11

Plaintiff was being assaulted and, despite a reasonable opportunity to do so, Defendant failed to intervene.[6] Accordingly, the Amended Complaint fails to meet the required pleading standard and the Court will grant Defendant's Motion. Because Plaintiff acknowledges that any reference to official capacity claims against Defendant was in error (Pl. Opp. Br. at 3), the failure to protect and intervene claims against Defendant in his official capacity are dismissed *with prejudice*; the failure to protect and intervene claims in Defendant's individual capacity are dismissed *without prejudice*.

### IV.   CONCLUSION

Based on the foregoing, Defendant's Motion is DENIED as to his Rule 12(b)(5) argument and GRANTED as to his Rule 12(b)(6) argument. Plaintiff has thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiff fails to file an amended complaint within the allotted time, the dismissal will be with prejudice. An appropriate Order accompanies this Opinion.

*s/Esther  Salas*
**Esther Salas, U.S.D.J.**

---

[6]   Defendant also argues that he "is entitled to qualified immunity because his conduct did not violate clearly established law." (Def. Mov. Br. at 13). Because "resolution of the qualified immunity defense details a fact-specific inquiry," and because the Amended Complaint lacked sufficient factual allegations to meet the Rule 12(b)(6) standard, the Court finds that the Amended Complaint is not amendable to a qualified immunity analysis. *See Thomas v. Indep. Twp.*, 463 F. 3d 285, 299 (3d Cir. 2006).